IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EMELINDA VARGAS-TORRES, et al

Plaintiffs

v.

PEDRO TOLEDO DAVILA, et al

Defendants

**Civil No. 08-1278 (SEC)**

**OPINION AND ORDER**

Pending before this Court is Co-Defendants Pedro Toledo-Davila ("Toledo"), Daniel Ruiz ("Ruiz"), and Jose Figueroa's ("Figueroa") Motion for Partial Summary Judgment[1] (Dockets ## 43 & 44), and Plaintiffs' opposition thereto (Dockets ## 50-52). After reviewing the filings, and the applicable law, Toledo's motion for partial summary judgment is **GRANTED** as to Toledo and Plaintiffs' substantive due process claims.

**Uncontested Facts & Procedural Background**

This case involves allegations of the use of excessive force and false arrest by members of the Illegal Weapons Division of the Puerto Rico Police Department ("PRPD") in Mayaguez. Plaintiffs aver that the present allegations, described in this Court's prior Opinion and Order regarding Defendants' Motion to Dismiss (Docket # 19), are part of a series of fabricated cases brought by PRPD officers in Mayaguez, which were eventually exposed through a anti-corruption operation undertaken by the Federal Bureau of Investigation ("FBI").

At the time of the events, Toledo was the Superintendent of the PRPD. Toledo has no personal knowledge of the events of the complaint. However, Plaintiffs allege that, ". . . he delegated functions and was not properly informed by others in command. . ." in order to willfully ignore alleged cases of police misconduct. Reports about an agent's improper conduct

---

[1] The Motion for Summary Judgment does not aver specific facts relating to Ruiz or Figueroa.

were halted at the organizational level just below the Superintendency, and would reach only up to the Auxiliary Superintendency of Drugs and Firearms. As such, specific cases were discussed only at the Auxiliary Superintendency level.[2] Administrative complaints against individual officers were handled by the Associate and Auxiliary Superintendents. Toledo delegated upon the Associate Superintendent, Ramon Ortega ("Ortega"), the function of investigating and reviewing the administrative files of police officers, as well as deciding the merits of administrative complaints against them, once the recommendation by the Legal Division was received. Therefore, only extraordinary cases were discussed at the Superintendent's level.

Plaintiffs have not proffered testimony or other evidence to contradict these assertions, which they have denied as stated. Rather, they argue that the fact Toledo did not actively review complaints of police misconduct represented willful ignorance to serious violations. They aver that ". . . this promoted by 'insulation' his gross negligence and/or willful blindness." Docket # 51 at 2. Furthermore, they aver that he testified to have had general knowledge of disciplinary problems, but that he found out about the alleged fabrication of criminal cases and corruption in Mayaguez through the FBI. They further aver that Toledo did not have a formal process to be informed about the names of police agents implicated in illegal arrests, or incidents of excessive force, and argue that this is sufficient to establish liability under 42 U.S.C. Sec. 1983 ("Section 1983").

**Standard of Review**

*FED. R. CIV. P. 56*

---

[2] To this, Plaintiffs rejoin averring: "Defendant Toledo designed a bureaucratic system that ensured his obliviousness from the concrete, known and well spread corruption practices of police officers that infringed the constitutional rights of citizens. Toledo did not even read the judicial Complaints grounded on civil rights violations in which he is a party defendant or instructed to be informed about citizen's complaints of police aggressions or improper conduct." Docket # 51 at 3-4.

**Civil No. 08-1278 (SEC)**                                                                                          **3**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary

**Civil No. 08-1278 (SEC)**                                                                                          **4**

judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

When filing for summary judgment, both parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation...Local Rule 56(c).

Local Rule 56(e) further provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Moreover, a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Local Rule 56(e).

**Applicable Law & Analysis**

Defendants argue that the facts of this case do not support a Fourteenth Amendment Claim for substantive due process or procedural due process. They also argue that Toledo was not involved with the street-level events, and that there is no non-respondeat supervisory liability against him under Section 1983, and on the contrary that he should be protected by the doctrine of qualified immunity. These arguments will all be addressed in turn.

*Supervisory Liability as to Toledo*

Plaintiffs allege that Toledo should respond under Section 1983, because he headed a bureaucratic hierarchy that allegedly willfully ignored patterns of police abuse. Attributing

**Civil No. 08-1278 (SEC)** 5

responsibility for alleged constitutional violations by street-level police officers to members of the bureaucratic hierarchy is not an easy proposition, given that Section 1983 does not permit liability on the basis of *respondeat superior*. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994). Case law establishes that "[a] supervisor may [. . .] be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." Vega v. Vivoni, 389 F.Supp.3d 160, 167 (D.P.R. 2005); see also Gutierrez-Rodriguez v. Cartagena, 882 F.3d 533, 561-562 (1st Cir. 1989). This requires an affirmative link between the supervisory structure and the street-level problems, which can be shown "if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." Id. (citing Gutierrez-Rodriguez, 882 F.3d at 561-562); see also Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir.1999). Inattention to a known history of abuse must be sufficient to equate to reckless or callous indifference to ongoing violations of civil rights. Id. A causal link may also be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994)(stating "[w]hen the supervisor is on notice and fails to take corrective action, say, by better training or closer oversight, liability may attach.").

In the case at bar, Plaintiffs have challenged Toledo's administrative practice of leaving most disciplinary matters to the Auxiliary and Associate Superintendents, namely Ortega. No case law cited by either party indicates that this practice was reckless, negligent, or even inappropriate. Additionally, Plaintiffs have failed to highlight specific occurrences that Toledo should have taken action on, nor have they provided evidence that suggests information that should have reached Toledo's hands was deliberately or willfully retained at the Auxiliary Superintendent's level in order to ignore constitutional violations. While it was the FBI, and not the PRPD that uncovered the problems of illegal arrests, excessive force, and evidence planting

**Civil No. 08-1278 (SEC)**                                                                                                      **6**

in the Mayaguez precinct, this does not permit an inference that there was knowledge within the PRPD that a history of abuse existed in the Mayaguez precinct, or with the particular officers named in the above captioned complaint.

Moreover, even if press reports and complaints by community groups had brought problems of police brutality and abuse to the attention of the PRPD, as Plaintiffs aver, these were not specific enough to have any casual relationship with the events giving rise to the present case. Plaintiffs have not been able to provide evidence that Toledo knew of the problems personally, nor have they proffered facts that demonstrate willful ignorance, or callous indifference to the problems in the Mayaguez precinct.

Plaintiffs point to Toledo's admission that he was aware of general problems with corruption and civil rights cases (Docket # 51 at 3), as proof that he "designed a bureaucratic system that ensured his obliviousness." Id. However, this is not enough to establish a causal link with the specific facts of this case, and general knowledge of systemic problems does not warrant the inference that his system of delegating certain responsibilities was designed to obviate problems of police misconduct. In sum, Toledo is too far removed from the street-level events described in the Complaint, which, while very serious in nature, do not expose a larger scheme of corruption within the PRPD. Accordingly, supervisory liability cannot be found against Toledo.

*Qualified Immunity as to Toledo*

Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). The question often posed in case law is if a reasonable official, taking into account clearly established law and what

**Civil No. 08-1278 (SEC)** 7

he or she knew at the time, might have understand that his actions were lawful. Natal-Rosario v. Puerto Rico Police Dept., 609 F.Supp.2d 194, 204 (D.P.R. 2009) (citing Singer v. Maine, 49 F.3d 837, 844 (1st Cir. 1995)). The test is as follows: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91 (1st Cir. 2004).

In the case at bar, a reasonable jury could find that the street-level allegations constitute clear violations of Plaintiffs' constitutional rights. Docket # 19.  However, the same cannot be said for Toledo's involvement, or lack thereof, because he had no personal knowledge of the events. Therefore, this Court must ask if constructing an administrative bureaucracy, where the Superintendent was not personally informed of all disciplinary problems, is sufficient to sustain a Section 1983 claim for supervisory liability.

As stated above, Plaintiffs have failed to produce any evidence that Toledo or his immediate subordinates knew of a pattern of fabrication of cases, at least before the FBI investigation.  No evidence has been proffered that Toledo was personally informed of the specific problems in the Mayaguez precinct before the acts giving rise to this case. Furthermore, Plaintiffs have failed to provide evidence that there was any public knowledge, or even high ranking individual knowledge, that an ongoing practice of fabricating investigations existed in Mayaguez, or with the particular officers sued in this case.

Seen in this light, Toledo's decision to delegate disciplinary functions, was at worst negligence, but also very possibly a necessary administrative policy decision. A reasonable police administrator could easily believe that the delegation of disciplinary functions to Auxiliary or Associate Superintendents was reasonable and necessary.

**Civil No. 08-1278 (SEC)**                                                                 8

Breaching the shield of qualified immunity would require a showing that Toledo was aware of the problems in the precinct and with the individual officers, but this class of willful ignorance has not been shown.  Furthermore, nothing more than threadbare allegations sustain the contention that the delegation of disciplinary responsibilities was an attempt by Toledo to shield his office from responsibly addressing police misconduct. Even if the system was flawed, and in an ideal world Toledo might have known about the ongoing misconduct, he is nevertheless protected because his policy of delegating disciplinary matters did not violate any clearly established law or constitutionally guaranteed right. Therefore, this Court finds Toledo to be protected by qualified immunity, and the motion for summary judgment will be **GRANTED** as to his personal liability.

*Fourteenth Amendment Substantive Due Process Clause*

At this stage, the case does not present a valid substantive due process claim, as such, this Court will revisit its prior ruling and grant dismissal on these grounds. Defendants are correct in asserting that Plaintiffs' arrest is best analyzed under claims for excessive use of force, illegal search, and seizure, and false arrest.

The \ law sustaining this conclusion is well established in the First Circuit and in Supreme Court case law. To wit, "[t]he Supreme Court has held that all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of … [the] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Mcleod-Lopez, 603 F.Supp. 2d at 340(citing Graham, 490 U.S. at 395) (internal citations omitted). The threshold question is whether the behavior is egregious and outrageous enough to shock the contemporary conscience. Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006).  This generally involves the intentional infliction of harm. Id. No such allegations or facts have been offered in the present case, which involves allegedly malicious, but not conscience shocking

**Civil No. 08-1278 (SEC)**                                                                                                    9

behavior, and no particularly violent acts. Accordingly, Plaintiffs' substantive due process claims are better posed as excessive force claims. Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008); see also Graham, 490 U.S. at 395.

Furthermore, the other prong of this case involves a claim for illegal search and seizure and false arrest. This claim continues, and precludes a substantive due process claim for conscience shocking behavior. These two are better analyzed under the Fourth Amendment's prohibition against illegal searches and seizures. As this Court has held before, due to the fact that ". . . an alternative constitutional claim is available in this case, Plaintiff's substantive due process claims on this front cannot prevail." McLeod-Lopez, 603 F.Supp. 2d at 340. Plaintiffs' substantive due process claims are therefore **DISMISSED with prejudice**.

**Conclusion**

For the reasons stated above, Toledo's motion for partial summary judgment is **GRANTED** as to all claims against Toledo and Plaintiffs' substantive due process claims against all Defendants. Said claims are hereby **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 20th day of April, 2010.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. Senior District Judge